IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


BOBBY D. EVANS,
      Petitioner,

vs.                                 Case No. 3:07cv98/LAC/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer to the petition with relevant portions of the state court record, and Petitioner filed a reply (Docs. 15, 21, 24).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Docs. 15, 21, Exhibits). Following a jury trial in the Circuit Court in and for Escambia County, Florida, Petitioner was found guilty of one count of uttering a forged instrument and one count of grand theft (Doc. 15, Ex. A at 10, Ex. B). On November 6, 2003,

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

Petitioner was adjudicated guilty and sentenced to two consecutive terms of five (5) years of incarceration with pre-sentence jail credit of thirty-six (36) days (Doc. 15, Exs. C, D).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA").  On November 9, 2004, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing November 29, 2004 (Doc. 15, Ex. F).  Evans v. State, 887 So. 2d 331 (Fla. 1st DCA 2004) (Table).  Petitioner did not seek review by the Florida Supreme Court or the United States Supreme Court.

On February 21, 2005, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 15, Ex. G).  Following an evidentiary hearing, the trial court denied Petitioner's motion in an order rendered December 2, 2005 (Doc. 15, Ex. H; Doc. 21, Ex. S).  On March 1, 2007, Petitioner filed a petition for belated appeal of the trial court's order (Doc. 15, Ex. K).  The First DCA denied the petition on the merits on July 9, 2007 (Doc. 21, Ex. W).  Evans v. State, 959 So. 2d 1192 (Fla. 1st DCA 2007) (Table).

On May 26, 2006, Petitioner filed a motion for jail credit, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 21, Ex. T).  The trial court denied the motion in an order rendered on June 13, 2006 (Doc. 21, Ex. U).

On June 5, 2006, Petitioner filed a petition alleging ineffective assistance of appellate counsel with the First DCA (Doc. 15, Ex. N).  The First DCA denied the petition on the merits on July 7, 2006 and denied Petitioner's motion for rehearing on August 10, 2006 (Doc. 15, Ex. O).  Evans v. State, 935 So. 2d 37 (Fla. 1st DCA 2006).

Petitioner filed the instant habeas action on February 28, 2007 (Doc. 1 at 6).  Respondent concedes that the petition is timely (Doc. 21 at 5).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d

662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND DEFAULT

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Id.* (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.* at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan, 513 U.S. 364 (1995). The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Id.* at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

"ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

A petitioner can overcome a procedural default in two narrow circumstances. The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim,

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. <u>Tower</u>, 7 F.3d at 210. Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state postconviction proceedings, any ineffectiveness of postconviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default that occur[s] . . . at the state collateral post-conviction level." <u>Henderson</u>, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); <u>Coleman</u>, 501 U.S. at 752; <u>In re Magwood</u>, 113 F.3d 1544, 1551 (11th Cir. 1997); <u>Johnson v. Singletary</u>, 938 F.2d 1166, 1174–75 (11th Cir. 1991)). To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different." *Id.*

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further,

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

IV.    TRIAL EVIDENCE

A summary of the evidence adduced at Petitioner's trial provides a helpful context in reviewing Petitioner's claims. As previously noted, Petitioner was charged with one count of uttering a forged instrument and one count of grand theft. The factual basis for the charges was that Petitioner cashed a United States Treasury check, payable to Beverly Lyttle, in the amount of $500.00 at Trisha's One Stop convenience store between August 17 and December 31, 2001 (*see* Doc. 15, Ex. A at 1). During opening statements, defense counsel argued that the case was about identity theft and false eyewitness identification (Doc. 15, Ex. B at 13). Counsel argued that the

evidence would show that Petitioner had an ID card that was issued in May of 2001, and during the time frame of the offenses, August 17 to December 31, 2001, Petitioner applied for a duplicate ID card because his original card was "missing or lost or stolen" (*id.* at 14). Counsel argued that the only evidence that Petitioner cashed the check was the testimony of the store manager, but the manager was mistaken as to the identity of the person who cashed the check, and there was no thumb print or conclusive evidence to show that Petitioner was the person who cashed Ms. Lyttle's check (*id.* at 14–15).

Beverly Lyttle testified that she did not know Petitioner, and she never gave him permission to cash a check on her behalf (*id.* at 17). Ms. Lyttle testified that she contacted the Internal Revenue Service (IRS) to inquire whether the agency had sent her a "rebate" check (*id.* at 18–19). In response, the IRS sent her a photocopy of a check issued to her, with her address and Social Security Number on it (*id.* at 18–20). Ms. Lyttle identified State's Exhibits 1 and 2 as the photocopy she received from the IRS (*id.* at 18–20; *see also* Doc. 21, Ex. V). Ms. Lyttle testified that although her name was written on the back of the check, it was not her handwriting, and she never signed it (*id.* at 20–21). She testified that she never received the original check (*id.* at 19). The State released Ms. Lyttle as a witness (*id.* at 21).

Mr. Vijay Patel testified that he was the manager of Trisha's One Stop, a convenience store (*id.* at 22–23). He testified that Petitioner and his family had shopped in the store since it opened ten (10) years prior (*id.* at 22). Mr. Patel testified that the store offers check cashing services (*id.* at 23). He testified that between August 17 and December 31, 2001, he cashed the check admitted as State's Exhibits 1 and 2 for Petitioner (*id.*). Mr. Patel testified that when Petitioner cashed the check, he presented an ID card, and he (Patel) wrote the number from the ID card on the back of the check (*id.*). He testified that he also wrote Petitioner's date of birth on the back of the check (*id.* at 24). Mr. Patel identified his handwriting on State's Exhibit 2 (*id.*). Mr. Patel further testified that he saw Petitioner sign the check (*id.*). He testified that Petitioner told him the check belonged to his aunt, who was in jail (*id.*). Mr. Patel testified that he gave Petitioner $495.00 (*id.*).

On cross-examination, Mr. Patel testified that he had cashed other checks for Petitioner in the past (*id.* at 25). He testified that he believed that Petitioner's mother was with Petitioner the day he cashed Ms. Lyttle's check; however, he was "not 100-percent sure" (*id.*). He also admitted that

he was unsure which particular day the check was cashed (*id.*).  Mr. Patel testified that his father owns Trisha's One Stop, and the family business suffered a $500.00 loss for cashing Ms. Lyttle's check (*id.* at 26).  When asked whether he was "absolutely 100-percent positive" that Petitioner cashed Ms. Lyttle's check, Mr. Patel responded that he was "positive" that Petitioner cashed the check (*id.* at 27).  The State admitted a photocopy of Petitioner's Florida ID card as State's Exhibit 3 (*id.* at 28–29).  The State rested its case, but did not release Mr. Patel (*id.* at 27, 30).

The court granted the defense a break in the proceedings to discuss whether Petitioner wished to testify, after which defense counsel notified the court that Petitioner did not wish to testify on his own behalf (*id.* at 30–33).  The court conducted the following colloquy with Petitioner:

> THE COURT:  Okay.  Let me explain something, Mr. Evans, while the jury is still out.  And I want to make sure that you understand completely so the record will be clear.
>
> In a criminal case, in any criminal case, the State, or the government, cannot compel a defendant to become a witness.  They can't subpoena you and put you on the stand.  They can subpoena anybody else, but they can't subpoena the defendant and compel you to be a witness.  They can compel anyone else to get up there.  Now, they might get up there and take the fifth, but as to a defendant, they can't even—they can't compel you to be a witness.
>
> Now, based upon that—you've had an opportunity to discuss with your attorney, and I assume your attorney and you have had discussions about the advantages of you becoming a witness, and based upon that, it's your decision not to become a witness in this case.  It's not your lawyer's decision.  Your lawyer can advise you, but it's 100 percent your decision not to become a witness in this case; is that true?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  You've had a chance to talk with your lawyer.
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:   And you understand that you can testify and become a witness?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  And you'll be treated just like any other witness?

THE DEFENDANT:  Yes, sir.

THE COURT:  Or you can choose not to be a witness.  Is that true?

THE DEFENDANT:  Yes, sir.

THE COURT:  And it's your choice not to be a witness?

THE DEFENDANT:  Yes, sir.

THE COURT:  Also, you have the right to call witnesses.  It's my understanding you're going to call one witness and then you're going to rest.  Is that where we are?

MR. OBIN [defense counsel]:  Yes,

THE COURT:  Is that your understanding, sir?

THE DEFENDANT:  Yes, sir.

(*id.* at 33–35).

The defense called one witness to testify, Petitioner's mother, Connie Hills.  She testified that she never accompanied Petitioner to Trisha's One Stop (*id.* at 35–36).  The evidence closed upon the State's announcing that it would not present rebuttal, and the trial court excused the jury for recess, advising that closing arguments would be heard upon the jury's return (*id.* at 36–37).

Prior to commencement of the charge conference, the trial court addressed the subject of closing arguments.  The court observed that in defense counsel's opening statement, counsel "indicated that there were two issues here," the identification of Petitioner by Mr. Patel and "identity theft" stemming from Petitioner's alleged loss of his Florida ID card (*id.* at 37).  The trial court then stated that both sides would be allowed to make fair comment upon the evidence admitted during the trial, but because the record was "100-percent silent and [there was] no evidence that this defendant suffered any lost ID or suffered any identification theft," defense counsel would not be permitted to argue identity theft or a lost ID in his closing (*id.* at 37–38).  In response, defense counsel disagreed, contending that because the State's evidence showed that a duplicate

identification card had been issued within the time period the crimes were alleged to have been committed, "[i]t creates an indication or presumption that there's two identifications floating out there" (*id.* at 38). Thus, defense counsel argued that he "should not be prejudiced in [his] ability to argue that there was more than one ID floating out there with [Petitioner's] likeness and signature on it" (*id.*). The trial court responded, explaining that while the State's evidence showed that a duplicate license had been issued, this was not proof of "identity theft" because a duplicate license can be obtained without one having been lost or stolen (*id.* at 38–40). The trial court stated, "There is no testimony, no evidence whatsoever, as to identity theft here. None." (*id.* at 40). It was in response to this explanation that defense counsel then moved to reopen Petitioner's case:

> MR. OBIN: Well, Judge, if that's your decision, I respect that. Then I respectfully request to be allowed to call Mr. Evans even though it's our belief that his defense will be unduly prejudiced.

(*id.*). The trial court denied defense counsel's motion, reasoning, in part, that "the defendant cannot sit back and make decisions and then wait for me to make judicial decisions and see that his tactics is [sic] not prevailing and now we want to go back and undue some of our defense tactics" (*id.*). As relevant, the trial court further explained:

> THE COURT: This defendant, after conferring with his lawyer, made a tactical decision not to become a witness. I went through the dialogue and the Q&A with him. He fully understood it.
>
> Now, once I then said, Mr. Obin, you're not going to be allowed to argue that he's got ID theft because there's no evidence of it, now you want to undue and make a—what your tactical decision was. You want to undue it.

(*id.* at 41–42). The court then clarified that defense counsel would be permitted to argue the fact that the ID card admitted as State's Exhibit 3 was a duplicate ID for Petitioner, but he would not be permitted to "take it to an illogical conclusion" that the duplicate ID card was stolen (*id.* at 42–43).

During closing argument, defense counsel argued that the ID card admitted into evidence was a duplicate of Petitioner's ID card (*id.* at 55). He further argued that Mr. Patel's identification of Petitioner was unreliable because he could not recall the date that he cashed Ms. Lyttle's check, and he was mistaken in his testimony that Petitioner's mother was at the store with Petitioner, as evidenced by Ms. Hills' testimony that she was not with Petitioner at the store (*id.*).

The prosecutor argued that Mr. Patel's testimony that he had done business with Petitioner for ten years and was certain that Petitioner was the person who cashed the check proved beyond a reasonable doubt that Petitioner cashed Ms. Lyttle's check (*id.* at 53, 58–60). The prosecutor also urged the jury to look at the signature on Petitioner's ID card (State's Exhibit 3) and the signature on the back of the check (State's Exhibit 2) to determine if they were similar (*id.* at 60–61).

V.    PETITIONER'S CLAIMS

A.    Ground One: "Petitioner's fundamental right to testify on his own behalf was not permitted by the trial judge."

Petitioner contends the trial court's denial of defense counsel's motion to reopen the case to permit Petitioner to testify violated his constitutional right to testify on his own behalf (Doc. 1 at 4). Petitioner states if he had been permitted to testify, he would have testified regarding the reason he obtained a duplicate ID card, and that another person could have used his ID card at the store (Doc. 24 at 4).

Respondent concedes that Petitioner exhausted this claim by presenting it on direct appeal of his conviction (Doc. 21 at 8). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 8–18).

1.    Clearly Established Federal Law

A criminal defendant's right to testify on his own behalf "is one of the rights that 'are essential to due process of law in a fair adversary process,'" and it is "[e]ven more fundamental to a personal defense than the right of self-representation." Rock v. Arkansas, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n.15, 95 S. Ct. 45 L. Ed. 2d 562 (1975)) (finding right rooted in Due Process Clauses of Fifth and Fourteenth Amendments, in Compulsory Process Clause of Sixth Amendment, and in Fifth Amendment guarantee against compelled testimony). This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel. *See* Florida v. Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (citations omitted); Gallego v. United States, 174 F.3d 1196, (11th Cir. 1999) (citing United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992)). Yet, this right "is not without limitation"; it must sometimes "bow to accommodate other legitimate interests in the criminal trial process" so long as any restrictions are not "arbitrary or disproportionate to the

purposes they are designed to serve." Rock, 483 U.S. at 55–56 (internal marks and citations omitted); *see also* United States v. Byrd, 403 F.3d 1278, 1288 (11th Cir. 2005); United States v. Jones, 880 F.2d 55, 59 (8th Cir. 1989).

2.     Federal Review of State Court Decision

On direct appeal of his conviction, Petitioner argued that the trial court committed fundamental error by refusing to allow him to testify on his own behalf (Doc. 21, Ex. Q at 7–10 (citing Teague, Faretta, *supra*)).  The First DCA affirmed the conviction without written opinion (Doc. 15, Ex. F).  Although the state appellate court's affirmance without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be contrary to or an unreasonable application of clearly established federal law.  *See* Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255–56 (11th Cir. 2002) (holding that a state court decision that does not rest on procedural grounds alone is an adjudication on the merits and, therefore, entitled to deference under the AEDPA, even if the state court decision is not explained in a written opinion, and reviewing state court's rejection of claim to determine whether it was unreasonable application of clearly established federal law).

In United States v. Byrd, the Eleventh Circuit applied Rock v. Arkansas to facts similar to the instant case.  403 F.3d at 1282–88.  On direct appeal of his conviction, Byrd challenged the district court's denial of his request to reopen the case to permit him to testify.  The Eleventh Circuit began its analysis by addressing the constitutional question of whether Byrd was denied his right to testify in his own behalf.  *Id.* at 1282.  The court concluded that Byrd was not denied his right to testify because he knowingly and voluntarily waived that right before the district court.  *Id.* at 1282–83.  The Eleventh Circuit further held that an accused's right to testify generally must be exercised at the appropriate time, which is before the evidence-taking portion of the trial has closed. *Id.* at 1283, 1287 (citing United States v. Peterson, 233 F.3d 101, 105–07 (1st Cir. 2000); United States v. Jones, 880 F.2d 55, 59–60 (8th Cir. 1989)).  The court then addressed the second issue of whether the district court abused its discretion in deciding not to reopen the evidence to permit Byrd to testify.  *Id.*

The standard of review in this habeas action is different than the standard of review employed by the Eleventh Circuit on Byrd's direct appeal of his conviction. In this habeas action, the court reviews whether the state appellate court's determination that the trial court did not deprive Petitioner of his constitutional right to testify was contrary to or an unreasonable application of Rock. Only if the court answers that question in the affirmative does the court conduct de novo review of the constitutional claim. Furthermore, while the Eleventh Circuit's application of Rock to the constitutional question of whether Byrd was denied his fundamental right to testify is useful to this court in assessing the reasonableness of the state court's application of Rock to Petitioner's case, the abuse of discretion analysis is one that this court need not undertake. Upon review of the record in this case, the undersigned concludes that Petitioner cannot establish that that the state court's denial of his constitutional claim was contrary to or an unreasonable application of Supreme Court law.

Initially, Petitioner's own statements during the colloquy conducted by the trial court upon defense counsel's announcing that Petitioner did not wish to testify establish that Petitioner discussed with defense counsel the advantages and disadvantages of testifying, and Petitioner made the decision not to testify (see Doc. 15, Ex. B at 33–35). Furthermore, although Petitioner asserted in his Rule 3.850 motion that his waiver of his right to testify was not knowing and voluntary because defense counsel provided ineffective assistance in advising him not to testify, Petitioner has failed to establish that his waiver was the product of ineffective assistance of counsel. In the Eleventh Circuit, the appropriate legal standard for analyzing a claim that a defendant's waiver of his right to testify was the product of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See Teague, 953 F.2d at 1534. In Strickland, the Supreme Court defined two requirements for a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland</u>, 466 U.S. at 687.

The first prong of the <u>Strickland</u> test requires that a petitioner show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Where a petitioner claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the petitioner of the ability to choose whether or not to testify in his own behalf. Counsel must advise the defendant of his right to testify or not to testify, the strategic implications of each choice, and that the ultimate decision whether to testify belongs to the defendant alone. <u>Teague</u>, 953 F.2d at 1533. Counsel may advise the defendant, and should do so in the strongest possible terms not to testify if counsel believes that it would be unwise for the defendant to testify. *Id.* As to the second prong, the petitioner must demonstrate a reasonable probability that the jury would have rejected the evidence against him and acquitted him based upon his proposed testimony proffered in support of his ineffective assistance of counsel claim.

In the instant case, the trial court made factual findings after an evidentiary hearing on Petitioner's Rule 3.850 motion, in which Petitioner claimed that his waiver was involuntary due to counsel's ineffective assistance. In his post-conviction motion, Petitioner asserted that his defense to the charges was two-fold: (1) his Florida ID card was lost, stolen, or missing, and (2) Mr. Patel misidentified him as the person who cashed the check (*see* Doc. 15, Ex. G at 2). Petitioner asserted that defense counsel, during their discussions as to whether Petitioner should testify, advised him not to testify because the jury would learn of his criminal record, but counsel failed to advise him that pursuing the "lost or stolen ID" theory of the defense required Petitioner's testimony, nor did counsel advise him that he was no longer pursuing the "lost or stolen ID" theory (*id.*). Petitioner contended that counsel's failure to advise him that the "identity theft" aspect of the defense could not be pursued without his testimony rendered his waiver unknowing and involuntary (*id.* at 2–3). In his amended Rule 3.850 motion, Petitioner asserted that he would have testified to the following: (1) he lost his ID card in June or July of 2001, (2) he did not invalidate the original card because he thought it would reappear, (3) the last time he entered Trisha's One Stop was 1998, and (4) he did not cash Ms. Lyttle's check (*see* Doc. 15, Ex. K, attached amended motion at 4–5; *see also* Doc. 21, Ex. S at 2–3 (trial court discussing Petitioner's amended motion in which Petitioner included the substance of his excluded testimony and how the absence of his testimony prejudiced the defense)).

Both Petitioner and his trial counsel testified at the evidentiary hearing (*see* Doc. 21, Ex. S). Petitioner's counsel testified that Petitioner did not testify for two reasons: first, Petitioner had several prior felony convictions that the State would be able to bring out during cross-examination; second, Petitioner was not comfortable taking the stand—he did not believe he could handle the pressure of cross-examination by the prosecutor, and he did not believe his testimony would help his defense (*id.* at 8). Counsel testified that <u>prior to trial</u>, he and Petitioner discussed the possibility of Petitioner's testifying, and Petitioner expressed that he felt nervous taking the stand and did not feel that he could help his case by testifying (*id.* at 8–9). Counsel testified that Petitioner believed that Mr. Patel would exonerate him, even though counsel advised him that he had spoken with Mr. Patel, and Patel told him the opposite (*id.* at 13–14). Counsel further testified that when he and Petitioner discussed <u>at trial</u> the issue of Petitioner's testifying, Petitioner told him he did not wish to take the stand (*id.* at 9–10). At trial, Petitioner's concerns with testifying were his nervousness, his prior convictions, and the fact that he would not be able to add much to the evidence that had already been presented—the jury would either believe Mr. Patel or they would not believe him (*id.* at 14–15). Defense counsel testified that his personal concern with Petitioner testifying was that he would not be believable (*id.* at 9). Counsel acknowledged that no other witness was available to testify as to whether or not Petitioner's ID had been lost or stolen (*id.* at 10).

Petitioner testified at the evidentiary hearing that he wanted to take the stand at trial (*id.* at 16). He denied that prior to trial he and counsel discussed the issue of his testifying (*id.*). At the evidentiary hearing, Petitioner asked defense counsel why he persuaded him not to take the stand, and defense counsel responded that he communicated to Petitioner that the decision was completely Petitioner's, and he (counsel) merely advised him of the pros and cons (*id.*). Petitioner denied that he (Petitioner) made the decision not to testify (*id.*). On the subject of prior convictions, Petitioner admitted that he would have had to admit to six (6) prior felony convictions if he testified at trial; however, he stated he was not concerned about the jury knowing his criminal record because the prior felonies were drug-related offenses and did not involve theft (*id.* at 32).

After hearing the testimony, the trial court found as fact that defense counsel discussed with Petitioner the issue of Petitioner's testifying (Doc. 15, Ex. H at 1). The court additionally found that Petitioner chose not to take the stand because of his prior convictions and his general uneasiness at

the thought of testifying (*id.*). The court thus found defense counsel's testimony credible, and Petitioner's testimony, that he wanted to testify and was not concerned about the jury's learning of his six prior felony convictions, not credible. The state court's factual determinations, including credibility determinations, are presumed to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not presented clear and convincing evidence rebutting these factual findings, and the court finds no such evidence in the record. Consequently, the court must accept as correct the court's credibility determination and the finding that Petitioner chose not to testify because he did not want the jury to learn of his prior convictions and was generally uneasy about testifying. Furthermore, according to defense counsel's testimony at the evidentiary hearing, which the trial court believed, Petitioner's belief that he would not be able to add much to the evidence because the verdict rested on the credibility of Mr. Patel was part of the basis for Petitioner's decision not to testify. At no point during the evidentiary hearing did Petitioner indicate that his decision whether to testify was influenced by defense counsel's ability to argue the "lost or stolen ID" aspect of the defense. Therefore, Petitioner has failed to demonstrate that he would have testified if counsel had advised him that without his testimony, they could not argue the "lost or stolen ID" theory.

Finally, Petitioner has failed to establish a reasonably probability that he would have been acquitted if the jury had heard his testimony. The decisive issue in Petitioner's trial was whether the jury found Mr. Patel's identification of Petitioner as the person who cashed the check credible and reliable. Petitioner's proposed testimony that he lost his original Florida ID in June or July of 2001 would have had no impact on the jury's perception of Mr. Patel's credibility or reliability. Furthermore, Petitioner's proposed testimony that he had not been in the store since 1998 (three years prior to the crimes) and his blanket denial that he committed the crimes would not likely have cast doubt on Mr. Patel's testimony that he was "positive" that Petitioner was the person who cashed the check, especially in light of Mr. Patel's testimony that he was familiar with Petitioner by virtue of the fact that he had been coming into the store for ten years. Moreover, Petitioner's belief that his prior convictions would not have impacted his own credibility with the jury because the prior convictions were related to drugs, not theft or uttering a forged instrument, ignores the idea that the jury could have reasonably found a connection between theft crimes and drug crimes (that is,

Petitioner may have committed a theft crime in order to support a drug habit) or concluded that Petitioner's ability to recollect events was diminished because of his drug usage, or both.  It also ignores the impeaching impact of the convictions themselves.  It is the fact of the felony conviction itself that can undermine the credibility of a witness in the eyes of the jury.  *See* Fla. Stat. § 90.610; Fla. Std. Jury Instr. (Crim.) 2.5.  Indeed, it is evident from defense counsel's comment in his request to reopen the evidence, that is, that he was moving to reopen despite his belief that the defense would be "unduly prejudiced" by Petitioner's testifying, that Petitioner might have hindered the defense of his case by taking the stand.  Finally, there was no exculpatory evidence to support Petitioner's testimony.  Therefore, Petitioner failed to establish he was prejudiced by counsel's allegedly erroneous advice concerning whether he should testify.  *See* United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001) (defendant failed to demonstrate he received ineffective assistance of counsel for counsel's failure to call him to testify where defendant did not convincingly argue that his testimony would have assisted him at either a pretrial hearing or at trial; defendant would have essentially engaged in a swearing contest with the investigating officers about what occurred at the post-arrest interview; and defendant did not even address the viability of the countervailing tactical reasons that his counsel might have had for declining to call him to the stand, that is, the government could have easily attacked his credibility by using his prior drug convictions); Brown v. Artuz, 124 F.3d 73, 80–81 (2d Cir. 1997) (defendant had not established prejudice since the testimony he would have given would not have established a defense to the charges under state law); Soto-Alvarez v. United States, No. 94-2230, 1995 WL 434799, at **1–2 (1st Cir. July 20, 1995) (no prejudice since defendant's testimony would not have brought any new information to the jury's attention); Nilsen v. Borg, No. 94-15145, 1994 WL 651941, at **1–2 (9th Cir. Nov. 18, 1994) (no prejudice since jury would likely have found defendant's testimony implausible); Ross v. Johnson, No. 95-0745-BH-S, 2000 WL 284204 (S.D. Ala. Feb. 7, 2000) (petitioner cannot establish prejudice under Strickland since he failed to demonstrate that he would have testified to an exculpatory set of facts that a reasonable jury could have accepted, or that under these circumstances his taking the stand would have affected the outcome of trial).  *Cf.* Nichols v. Butler, 953 F.2d 1550, 1554 (11th Cir. 1992) (counsel's coercing defendant into silence with threat to withdraw from case mid-trial if defendant chose to testify was deficient and prejudiced the defense where case was "very close"; the only

evidence that Nichols was the person involved in the robbery was the eyewitness identification of him by a store employee who had glimpsed him only briefly; if Nichols had testified, he could have presented his version of the events of that evening in his own words; the jury would then have been able to weigh his credibility against that of the store employee's perception; and Nichols' testimony would have been supported by the exculpatory testimony of another witness who testified) (emphasis added).

Petitioner has failed to show that the waiver of his right to testify was the product of ineffective assistance of counsel. In light of Petitioner's valid waiver of his right to testify, and his failure to show that his testimony would have established a reasonable doubt about his guilt in light of the record in this case, the First DCA's denial of Petitioner's claim that the trial court's refusal to permit him to testify once the evidence had closed constitutionally infringed his right to testify was not contrary to or an unreasonable application of clearly established federal law. *See* Neuman v. Rivers, 125 F.3d 315, 317–19 (6th Cir. 1997) (denial of defendant's motion to reopen after both sides had rested, to permit him to testify, did not violate defendant's constitutional right to testify since defendant had voluntarily waived that right). Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

      B.    Ground Two: "Petitioner's rights to due process were violated when the State improperly told the jury to compare signatures."

Petitioner contends the State violated his due process rights by encouraging the jury to compare the signature on the uttered check with Petitioner' signature on his Florida ID card, because Petitioner was not on trial for forgery, and no handwriting expert testified (Doc. 1 at 4).

Respondent contends Petitioner failed to present the federal nature of his claim to the state courts (Doc. 21 at 19). While acknowledging that Petitioner argued on direct appeal that the trial court erred in overruling defense counsel's objection to the prosecutor's suggestion to the jury that they compare the signatures, Respondent argues Petitioner did not present his claim as a federal issue (*id.*). Respondent further contends that any attempt by Petitioner to return to state court to present his claim would be procedurally barred because Petitioner cannot take a second direct appeal (*id.* at 22). Therefore, the claim is procedurally barred from federal habeas review (*id.*). Respondent additionally contends that the legal issue of whether the State could properly urge the jury to

compare the signatures is purely a matter of state evidentiary law, and, as such, does not present a basis for federal habeas relief (*id.* at 21).

The state court record shows that in Petitioner's initial brief on appeal of his conviction, he argued that the trial court abused its discretion in permitting the prosecutor to tell the jury that it could compare the signature on Petitioner's ID card with the signature on the back of the check (Doc. 21, Ex. Q at 12–13). Petitioner argued two grounds in support of his position. First, urging the jury to compare the signatures was improper because Petitioner was not charged with forgery (*id.* at 12). Second, under Florida law, the jury was not competent to make a handwriting comparison without expert testimony (*id.* at 13). In support of this argument, Petitioner cited Huff v. State, 437 So. 2d 107 (Fla. 1983) and Redmond v. State, 731 So. 2d 77, 79 (Fla. 2d DCA 1999). Petitioner contends, in his reply to Respondent's answer, that his citation to Huff was sufficient to alert the First DCA to the federal nature of his claim.

In Huff, the defendant was on trial for the murder of his father and mother, Norman and Genevieve Huff. 437 So. 2d at 1088. On appeal of his conviction, Huff claimed that the trial court erred by denying his motion for mistrial when the state attorney implied in his closing argument that Huff had forged his deceased father's name to a guarantee agreement, as evidence of Huff's motive for killing his father, where the State had offered no evidence at trial regarding the forgery of documents. The Florida Supreme Court determined that the denial of the motion for mistrial was erroneous for three reasons. First, under Florida law, a jury is not competent to make a handwriting comparison without the aid of expert testimony. *Id.* at 1090 (citing Clark v. State, 114 So. 2d 197 (Fla. 1st DCA 1959)). Second, the prosecutor was prohibited by state law from commenting on matters unsupported by the evidence produced at trial. *Id.* (citing Glassman v. State, 377 So. 2d 208 (Fla. 3d DCA 1979)). Third, given the procedural background of the case on the forgery question, the damage to the defense by introduction of the prosecutor's intimations of forgery "clearly denied [Huff] a fair trial." *Id.* at 1091. As to the denial of Huff's right to a fair trial, the Florida Supreme Court noted:

> As the trial judge himself stated, the evidence of appellant's guilt presented by the state wasn't the strongest. The state's case was totally circumstantial. The state concedes in its brief that the prosecutor's remarks were both improper and foolish. Since the jury found the appellant guilty, it is impossible to measure what impact the

prosecutor's negative innuendoes had upon the jurors' deliberations. Since defense counsel could not rebut these prejudicial prosecutorial comments, it is apparent that appellant has been denied a fair trial.

*Id.*

The <u>Huff</u> opinion provides no indication that the Florida Supreme Court decided the case on federal grounds. The state supreme court did not cite a federal case or a federal constitutional provision as the basis for its decision, nor did it reference any federal right violated by the prosecutor's comment. Likewise, the other state case relied upon by Petitioner in his argument of this issue, <u>Redmond v. State</u>, was not decided on federal grounds. 731 So. 2d at 79. Furthermore, Petitioner did not label the claim "federal" in his appellate brief, nor did he otherwise reference a federal source of law in conjunction with this claim. Accordingly, the undersigned concludes that Petitioner did not fairly present a federal due process claim to the state courts. *See* <u>Baldwin</u>, 541 U.S. at 32. *Cf.* <u>Wells v. Sec'y Dep't of Corr.</u>, 2009 WL 2873180, at *2 (11th Cir. Sept. 9, 2009) (habeas petitioner fairly presented federal claim of denial of constitutional right to confront witnesses to the state courts where petitioner cited and discussed only one case in his brief on direct appeal in the state courts, <u>Abreu v. State</u>, 804 So. 2d 442 (Fla. 4th DCA 2001), and in that case, the Florida appellate court determined that a state statute relieving a party of the need to prove unavailability before introducing prior testimony was "unconstitutional as a violation of the Sixth Amendment's confrontation clause.").

As Respondent contends, any attempt by Petitioner to return to state court to present his claim would be procedurally barred because Petitioner cannot take a second direct appeal. Therefore, the claim is procedurally barred from federal habeas review. Furthermore, Petitioner has not made a showing of cause and prejudice to overcome the procedural bar. Therefore, federal review of Ground Two is not available.

  C. <u>Ground Three: "Petitioner was denied effective assistance of counsel at trial."</u>

In Petitioner's reply brief, he expressly withdraws Ground Three from consideration (*see* Doc. 24 at 7). Therefore, the court need not consider this claim.

VI. CONCLUSION

Petitioner failed to establish a basis for federal habeas relief as to Ground One. Ground Two is procedurally barred from federal review; and Ground Three has been withdrawn. Therefore, the habeas petition should be denied.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 30th day of September 2009.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).